UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 09-328-GWU


TINA KAY COURTER,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

Tina Courter brought this action to obtain judicial review of an unfavorable

administrative decision on her applications for Disability Insurance Benefits (DIB)

and for Supplemental Security Income (SSI). The case is before the court on cross-

motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities? If not, a
      finding of non-disability is made and the claim is denied.

1

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

    Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

09-328  Tina Kay Courter

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Courter, a 43-year-old former housekeeper/cleaner and prep cook with a "limited" education, suffered from impairments related to grade II spondylolisthesis with a bilateral spondylosis at L4-L5 and mild to moderate degenerative disc disease, degenerative joint disease in the right knee, being status post right knee meniscectomy and synovectomy, chronic obstructive pulmonary disease, obesity, depression, anxiety, and a learning disorder.  (Tr. 14, 20).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 17).  Since the claimant could return to her past relevant work, she could not be considered to be totally disabled.  (Tr. 20).

The court must determine the time period relevant to this appeal.  Courter initially alleged a disability onset date of July 15, 2000 on her current applications for DIB and SSI.  (Tr. 130, 136).  At the administrative hearing, the ALJ noted that the record revealed two prior final denial decisions on disability applications from 2002 and March of 2005.  (Tr. 28).  The plaintiff amended her onset date to March 26, 2005.  (Tr. 28).  However, the ALJ chose to reopen the earlier applications and

ultimately considered the time period back to July 15, 2000.  (Tr. 12-13).  Thus, the time period for DIB consideration runs from this date until December 31, 2005, when her DIB-insured status expired.  (Id.).  With regard to the SSI claim, the proper inquiry is whether the claimant was disabled on or after her application date.  Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993). Therefore, the pertinent time frame for SSI consideration runs from the November 14, 2000 protective filing date of Courter's first SSI application through the October 15, 2008 date of the current denial decision.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Courter could return to her past relevant work, the ALJ relied heavily upon the testimony of vocational expert Micha Daoud.  Daoud reported that the plaintiff's past work as a housekeeper/cleaner was classified as light in exertion and unskilled although she actually performed it as the medium level range on occasion.  (Tr. 58).  The claimant's past work as a prep cook was described as medium in exertion although she had actually performed the job at the light level.  (Id.).  The ALJ presented a hypothetical question to the expert which included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) a need to change positions between sitting,

standing or walking once per hour; (2) an inability to more than frequently reach overhead; (3) an inability to more than occasionally bend, climb, stoop, kneel, crouch, or crawl; (4) an inability to operate controls with her feet; and (5) a limitation to simple one- or two-step instructions and work at an even pace while performing routine and repetitive tasks in a work environment with no more than moderate to average amounts of stress. (Tr. 58-59). In response, the witness testified that the cleaning work could still be performed at the light level and the prep cook work could be done as Courter actually performed it.[1] (Tr. 59). Therefore, assuming that the vocational factors considered by Daoud fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Loraine Glaser examined Courter and diagnosed exogenous obesity, low back pain, degenerative joint disease of the right knee and asthma with continued tobacco abuse. (Tr. 282). Dr. Glaser opined that the plaintiff would be "mildly to moderately" impaired with regard to sitting, standing, ambulating, bending, pushing, pulling, and lifting and carrying heavy objects. (Tr. 283). The doctor also precluded squatting and indicated she would need a dust-

---

[1] The administrative regulations provide that past work can be considered either as generally performed in the economy or as a claimant actually performed it. 20 C.F.R. § 404.1560(b)(2).

free environment. (Id.). Dr. Gary Demuth reviewed the record and opined that the claimant could perform light level work restricted from a full range by (1) a need to alternate between sitting and standing on an hourly basis; (2) limited in pushing and pulling in the lower extremities; (3) an inability to more than occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch or crawl; and (4) a need to avoid exposure to hazards. (Tr. 307-314). Dr. Jerry McCloud, another reviewer, later affirmed this opinion. (Tr. 316). The ALJ's findings were essentially compatible with these restrictions and the claimant has not presented evidence that her past relevant work would be precluded by these restrictions. More severe physical restrictions than those found by the ALJ were not indicated by such treating and examining sources as the staff at Wellington Orthopaedic and Sports Medicine (Tr. 246), Dr. Ronald Hess (Tr. 247-258), Dr. Set Shahbabian (Tr. 259-267), the staff at the University of Cincinnati Hospital (Tr. 268-273), and Dr. Jeffrey Holmes (Tr. 320-334). These reports provide substantial evidence to support this portion of the administrative decision.

The ALJ also dealt properly with the evidence of record relating to Courter's mental status. Psychologist Nancy Schmidtgoessling examined the plaintiff and diagnosed a depressive disorder and a learning disorder. (Tr. 277). The plaintiff would be limited to simple one- or two-step job instructions, with a "moderate" restriction concerning maintaining attention and concentration and tolerating work

stresses.  (Id.).  The claimant would also be "mildly" limited in relating to coworkers and supervisors.  (Id.).  Psychologist Stephen Meyer reviewed the record and opined that Courter would be "moderately" limited in such areas as understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended time periods, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, and responding appropriately to changes in the work setting.  (Tr. 303-304).  Psychologist David Dietz later reviewed this opinion and affirmed it.  (Tr. 315).  The mental restrictions found by the ALJ were essentially consistent with these opinions.  Therefore, these opinions provide substantial evidence to support the administrative decision.

Courter argues that the ALJ erred in failing to find that her mental problems met the requirements of at least one of §§ 12.05B, 12.05C and 12.05D of the Listing of Impairments.  Section 12.05B requires a claimant to produce "a valid verbal, performance, or full scale IQ of 59 or less."  Section 12.05C requires "a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Section 12.05D requires:

a valid verbal, performance or full scale IQ of 60 through 70 resulting
in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

The regulations further provide that "mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R., Part, 404, Subpart P, App. 1, § 12.05.  This requirement must also be satisfied to meet any of these Listing sections.

In the present action, Schmidtgoessling administered intelligence testing which produced a verbal IQ score of 61, a performance IQ score of 65 and a full scale IQ score of 59.  (Tr. 276).  The examiner opined that these scores were valid. (Id.).  The examiner declined to diagnose mental retardation because she had no IQ scores, adaptive scores or academic scores from Courter's developmental years. (Tr. 277).

The record was reviewed by Psychologist Stephen Meyer.  Meyer noted the IQ scores within Listing range but opined that these scores were an underestimate of Courter's ability based upon the adequacy of her reported Activities of Daily Living, and the field office observations of her behavior, and her work history.  (Tr. 301).  This finding was later affirmed by Dietz.  (Tr. 315).

Records from the Cincinnati public schools were submitted shortly before the ALJ issued his decision.  (Tr. 166-170).  These revealed that at the age of 14, Courter was found to need assignment to special education.  (Tr. 167).  Achievement testing revealed that she was spelling and performing math at the 3rd grade level.  (Tr. 168).  With regard to reading, she could identify words at the 5th grade level and functioned at the 6th grade level in passage completion.  (Id.).  These scores were generally below her 6th grade academic level at the time.  (Tr. 169).  Intelligence testing revealed a full scale IQ score of 76.  (Tr. 167).  The claimant's home life was noted to be unsettled and she had a poor attendance record and these factors were thought to play a significant role in Courter's problems with academic functioning.  (Tr. 169).  Mental retardation was not diagnosed.  (Tr. 166-170).  Remedial education and a referral to the Hamilton County Attendance Officer were recommended.  (Tr. 170).

The ALJ concluded that Courter had not established the required deficits in adaptive functioning prior to the age of 22 to meet one of the Listing sections.  (Tr. 16-17).  He cited Schmidtgoessling's statement that she lacked information on this question in support.  (Tr. 16).  The ALJ also noted Meyer's opinion that the plaintiff's work history and activities of daily living did not support her claim.  (Id.).  Finally, the ALJ indicated that he felt that the school records did not reveal a diagnosis of mental retardation but suggested that her academic problems were the result of a

disordered home life and poor school attendance rather than a cognitive disorder. (Tr. 16-17).  The claimant argues that this decision was erroneous.

Schmidtgoessling examined Courter in July of 2006 (Tr. 274) and, so, had no opportunity to see the Cincinnati school records which were not submitted into evidence until April of 2008 (Tr. 166).  Meyer, the medical reviewer, also did not see this report because he saw the record in August of 2006.  (Tr. 289).  The plaintiff asserts that if the examining and reviewing sources had seen this report, they would have reached a different conclusion regarding the issue concerning whether she had established the necessary deficits in adaptive functioning prior to the age of 22. The claimant argues that the ALJ should have sought the advice of a medical expert who had reviewed the entire record.  She cites Social Security Ruling 96-6 which states that the administration must obtain an opinion from a medical expert "when additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."  However, in the current case, the ALJ saw the school records and, in his opinion, they did not support Courter's claim of disabled status.  In the unpublished case of Kelly v. Commissioner of Social Security, 314 Fed. Appx. 827, 830-831, 2009 WL 33266 (6th Cir. February 9, 2009), the Sixth Circuit Court of Appeals indicated that school records submitted after the

14

state agency physicians had rendered their opinions did not require an updated opinion from a medical expert.  Therefore, the court finds no error.

Courter also argues that the ALJ erred by overlooking Schmidtgoessling's findings on the Wechsler Memory Scale-III that her scores ranged from mildly retarded to the borderline range as well as on the Vineland ABS where scores in the mild mental retardation range were recorded in the areas of communication and socialization.  (Tr. 276-277).  However, the court notes that Schmidtgoessling, the examiner, would certainly have been aware of these results and she still did not diagnose mental retardation.  Therefore, the court finds no error.

The court notes that Courter submitted several additional medical records directly to the court which were never seen by the ALJ.  This action raises an issue concerning a remand for the taking of new evidence before the Commissioner. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g).  The statute provides that a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding.  Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).  In

order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  <u>Sizemore</u>, 865 F.2d at 711.  Thus, the new evidence must be "material" and "good cause" must be shown why it was not previously submitted.

The medical records with which Courter seeks a remand of the action include a report from examining Psychologist Reba Moore dated February 16, 2010 and a review of the record from non-examining Psychologist Linda Hartmann dated January 26, 2010.  Clearly, both records were compiled well after the ALJ issued his final decision on October 15, 2008.  While the records were not in existence at the time of the denial decision, such, by itself, does not satisfy the good cause test and a valid reason for failure to obtain the evidence must still be shown.  <u>Oliver v. Secretary of Health and Human Services</u>, 804 F.2d 964, 966 (6th Cir. 1986).  The claimant asserts that she could not anticipate that the ALJ would decide that the school records were not evidence of deficits in adaptive functioning.  However, she had the burden of proving her case before the ALJ and failed to do so.  Therefore, the claimant has failed to meet the good cause requirement and, so, a remand for the taking of new evidence is not appropriate.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the

defendant's summary judgment motion and deny that of the plaintiff.  A separate

judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of June, 2010.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**